SOULAS, APPELLANT, *v.* TROY DONUT UNIVERSITY, INC. ET AL., APPELLEES.

(No. 82AP-540—Decided May 5, 1983.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Robert E. Tait,* for appellant Soulas.

*Messrs. Thompson, Hine & Flory* and *Mr. William R. Case,* for appellees Sauter and Barouxis.

*Messrs. Muldoon, Pemberton & Ferris* and *Mr. David L. Pemberton,* for appellee Troy Donut University, Inc.

McCORMAC, J. Nick Soulas, plaintiff-appellant, one-third owner of Troy Donut University, Inc. ("Troy"), an Ohio corporation, filed a complaint in Franklin County Court of Common Pleas against George L. Sauter and James Barouxis, each of whom also owned one-third of the stock in the corporation, alleging that in June 1980, they had engaged in a course of conduct designed to minimize the profits available to the corporate shareholders and to eliminate Soulas from participation in the benefits of the corporation by causing their salaries to be increased to unreasonably high levels. Soulas also alleged that Sauter and Barouxis had breached the fiduciary duty owed by them as majority directors and officers to Soulas, a minority shareholder, to act in good faith in relation to the corporation's affairs.

Among other relief, Soulas sought an injunction against Sauter and Barouxis from receiving salaries from Troy in excess of the amounts that they had been paid prior to June 1980, and an order requiring Sauter and Barouxis to repay Troy any monies in excess thereof.

Sauter and Barouxis answered, asserting that their salaries as employees of the corporation were properly authorized in good faith.

After trial before the court, judgment was returned for defendants.

Plaintiff has appealed, asserting the following assignments of error:

1. "The trial court erred in finding that the salaries paid to defendants Sauter and Barouxis were not excessive or otherwise unreasonable under the circumstances."

2. "The trial court erred in not finding that the actions of Sauter and Barouxis were a breach of their fiduciary duty or otherwise not in the best interests of the corporation."

The assignments of error are combined for discussion as they are interrelated.

Soulas had been engaged in the donut business since 1954 and started a Jolly Roger Donut Shop in 1961. Thereafter, he brought Sauter and Barouxis into the donut business as employees and trained them to be bakers. In 1970, Soulas, Sauter and Barouxis formed a subchapter S corporation for ownership of a Jolly Roger Donut Shop in the university area. The three persons each owned one-third of the corporation and were to split profits on a one-third basis. The donut shop had a franchise from Jolly Roger at a cost of one percent of the gross sales, which was less than the normal charge of two percent. Soulas controlled the Jolly Roger donut name. There was also a two percent payment for advertising.

The agreement between the parties provided that Sauter and Barouxis would be employed full time by the donut shop and that Sauter's salary would be $175 per week and Barouxis' salary $150 per week with a provision that the salaries would increase at the rate of the cost of living. The parties operated along these lines until 1979, at which time the salary of Sauter, the manager, was $16,205, and the salary of Barouxis, the assistant manager, was $13,857 per year. The donut shop was consistently showing profits and the three owners of the subchapter S corporation were splitting profits equally in the average of about $12,000 per year each. In 1979, a problem developed with the use of the Jolly Roger name, as a result of another entity allegedly having control of that name. To avoid litigation, the name was changed from "Jolly Roger" to "Jolly Pirate" and the franchise agreement was cancelled. Since that time, Sauter and Barouxis assumed the duties formerly paid for under the franchise agreement, such as purchase of supplies and advertising.

In July 1980, Sauter and Barouxis called a meeting of the corporation directors, without notifying Soulas, and greatly increased each of their salaries. Sauter's salary was increased from $380 a week to $700 a week, and Barouxis'

salary was increased from $340 a week to $660 a week. The result of those increases in salary was that the labor cost of their donut shop far exceeded the labor costs of any other donut shop analyzed. In 1981, their labor charge amounted to 52.68 percent of the gross income compared to an average in the industry of 32.41 percent. A further result of the salary increases was that the profits generated by the corporation became almost non-existent. Hence, Soulas, a one-third owner of the corporation, was effectively eliminated from receiving any profits from the corporation, although most of Troy's expenses remained about the same other than the salaries of Sauter and Barouxis and Troy's gross income was about the same.

There was substantial testimony that a manager of a comparable donut shop received a salary of $450 a week, at most, and, that the assistant manager received less.

Sauter and Barouxis attempted to justify their increased salaries by stating that they were worth that much, pointing to the previous profits made by the corporation. However, it was admitted that they would probably not be paid that much were they not owners. Sauter and Barouxis testified, without verification, that many additional hours of work were required of them as a result of the cancellation of the franchise in 1979, and of the additional duties transferred to them. However, the business records showed that in the first six months of 1980, Sauter only worked extra hours for three weeks and that Barouxis was only there for forty-six days, primarily because of a health problem.

R.C. 1701.60(A)(3) permits a majority of the directors of an Ohio corporation to establish reasonable compensation for officers and directors, irrespective of any personal financial interest. However, the compensation paid to corporate officers and directors must bear a reasonable relationship to the value of services rendered.

See 12 Ohio Jurisprudence 3d 110, Business Relationships, Section 450; *Berkwitz* v. *Humphrey* (N.D. Ohio 1958), 163 F. Supp. 78. In determining the reasonableness of the compensation, all relevant factors should be considered, which would primarily include: (1) whether there has been an increase in the business of the corporation, (2) the amount of compensation paid to employees for comparable work by similar corporations in the same industries, and (3) whether there has been a proportionate increase in the duties and responsibilities of the officer employees in connection with the substantial increase in their compensation. See *Stearns* v. *Dudley* (S. Ct. 1947), 76 N.Y.Supp. 2d 106; *Fendelman* v. *Fenco Handbag Mfg. Co.* (Mo. 1972), 482 S.W. 2d 461.

The trial court's finding that the increases in salary voted themselves by Sauter and Barouxis were reasonable is against the manifest weight of the evidence. The trial court made no factual findings to justify the increases other than stating that Sauter and Barouxis were "working like galley slaves." However, the evidence adduced at trial shows no factual basis to justify the extremely substantial increases in salary which Sauter and Barouxis voted themselves at the expense of eliminating all profit of the corporation and the one-third share of profits that would otherwise be enjoyed by plaintiff as one-third owner of the corporation.

The burden was upon the director employees to justify their salaries and to show the reasonableness thereof. *Fendelman* v. *Fenco Handbag Mfg. Co., supra.* This rule applies with particular force in this case since their salaries were increased at a meeting to which Soulas, the minority director, was not invited. That burden was not met.

Looking at the pertinent factors, the evidence shows that there has not been a significant increase in the business of the corporation since 1979. The donut shop has proceeded at about the same level of

gross income. All of the evidence shows that the compensation paid to managers and assistant managers of donut shops with a similar gross income was far less than that voted by Sauter and Barouxis to themselves. Actually, the wages paid them prior to the increase voted in 1980 were at the top of the industry pay scale, although it may have been that they were paying more attention to the business and working more hours than managers and assistant managers who did not have an ownership interest. There was no evidence of increase in the duties and responsibilities of Sauter and Barouxis other than the testimony that they performed the duties that Soulas was performing under the franchise agreement at one percent of the gross. (Ordinarily two percent of the gross is charged for these services.) There was no indication that the amount of time spent by Sauter and Barouxis justified additional compensation of over two percent of the gross income, which was the normal franchise payment for these services.

Although Sauter and Barouxis denied any intent to deprive Soulas of any profits of the corporation, the conclusion is virtually inescapable that their actions in increasing their salaries to the extent they did were calculated to result in eliminating any profit to Soulas from the subchapter S corporation. Sauter admitted under cross-examination that had he and Barouxis not been owners the salaries they voted themselves may not have been justified.

Minority shareholders have a cause of action against controlling shareholders for attempting to divert corporate profits to themselves at the expense of the minority. See *Forbes* v. *Wilson* (N.D. Ohio 1917), 243 F. 264.

The conclusive finding of the trial court that the salaries voted by Sauter and Barouxis to themselves were reasonable is against the manifest weight of the evidence. There was no competent evidence to support a finding that these salaries would have been voted to non-owner employees performing the duties that they were performing. Hence, the only reasonable conclusion from the evidence is that the salaries were intended to deprive Soulas of any share in the profits of the corporation.

The franchise agreement which limited Sauter and Barouxis to pay raises each year in conjunction with the consumer price index was no longer applicable after the franchise agreement was terminated. However, the record supports, at most, an increase in the salaries of Sauter and Barouxis in 1980 and annually thereafter in accordance with the consumer price index to keep them even with inflation as in the past, plus an addition to their salaries annually of one percent of the gross income of the corporation each for being required to perform the duties which were provided previously under the cancelled franchise agreement. There was testimony that those services were ordinarily provided for two percent of the gross income.

Appellant's assignments of error are sustained. The judgment of the trial court is reversed. The case is remanded to the trial court to enter judgment for Soulas and Troy requiring Sauter and Barouxis to repay Troy all monies received as salary or compensation from Troy in excess of the amounts approved in this opinion.

*Judgment reversed*
*and case remanded.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.