MLINARCIK et al., Appellant and Cross–Appellee,

v.

E.E. WEHRUNG PARKING, INC. et al., Appellees and Cross–Appellants.

[Cite as *Mlinarcik v. E.E. Wehrung Parking, Inc.* (1993), 86 Ohio App.3d 134.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 61638 and 61667.

Decided Feb. 1, 1993.

*Robert S. Turoff,* for appellant and cross-appellee.

*Albert Leonetti,* for appellees and cross-appellants.

HARPER, Judge.

Appellant, Shirley Mlinarcik, appeals from the judgment of the Cuyahoga County Court of Common Pleas in favor of appellees, E.E. Wehrung Parking, Inc., Robert Wehrung and Marilyn Wehrung. Appellees cross-appealed the trial court's award of attorney fees to appellant and that court's failure to dismiss the action. We affirm in part and reverse in part.

I

Shirley filed a shareholder derivative suit alleging that the compensation paid to Robert and Marilyn was unreasonable and excessive and should be reimbursed to the corporation.

Edgar Wehrung created E.E. Wehrung Parking, Inc. ("E.E.") in 1948. Shirley and Robert are the only children of Edgar. E.E. is the holder of a lease on a

parking garage located on East 13th Street in Cleveland, Ohio. E.E.'s sole operation is the subleasing of the garage to another company for an annual sum of $41,600. E.E. has a total of one hundred fifty shares of stock outstanding. One hundred and eleven of the shares are owned by Robert, nine and one-half are owned by Marilyn, twenty-eight and one-half are owned by Shirley, while the remaining one share is owned by Ester Pell. Marilyn is Robert's wife.

After the death of Edgar, Robert took over the management of the corporation while Marilyn and Shirley were placed on the board of directors and paid directors' fees. Robert paid salaries to his wife and himself.

Marilyn received $3,900 from 1967 until 1982 when her salary increased to $7,200 a year. Marilyn is employed as a secretary by the corporation. She works for a total of about thirty to thirty-five hours a year.

Robert, as the president of the corporation, is paid $10,800 a year in salaries. He has received this amount from 1982 through 1990. Robert's job consists of a once-a-month visit to the garage. He prepares the monthly payroll checks, which consists of one check for himself and one for his wife; prepares and deposits a payroll tax check each month; writes other miscellaneous checks; and goes to the post office once each year to mail shareholders reports.

Harvey Rosen, who testified as an expert witness for Shirley, stated that the value of services performed by Robert and Marilyn was between $567 and $2,000 per year. The first figure is based on the services they performed and the amount of time necessary to perform those services. The second figure is based on how much it would cost to hire a management company to perform the services undertaken by Robert and Marilyn.

Shirley testified that she received director's fees as a director of the corporation. She further testified that no shareholders or directors' meetings were ever called. She did not know that Robert and Marilyn were being compensated for their services. She did not know what she was supposed to do as a director and never asked.

Shirley's attorney, Robert Turoff, testified that he rendered legal services in the amount of $13,175 in the prosecution of this case.

## II

Appellant's assignments of error are as follows:

"I. The trial court erred in finding that appellees' compensation was not illegal and/or excessive in relation to the services they performed.

"A. Appellees are directors, majority shareholders and officers of a corporation and thus have a fiduciary relationship to the corporation and its shareholders.

"B. Appellees never held shareholders or directors meetings and never secured an affirmative vote of the majority of directors in office before instituting a compensation scheme. The compensation is therefore illegal and should be returned to the corporation.

"C. The compensation paid to appellees was excessive and did not bear a reasonable relationship to the value of their services.

"D. Appellees did not sustain their burden of proof to show that their salaries were reasonable.

"II. It was improper for a successor judge to render a judgment when an element exists of the credibility of witnesses and when the action was tried before a different judge.

"A. The predecessor trial judge, as finder of the facts, was both judge and jury, and therefore, the successor judge may only perform ministerial services.

"B. The witnesses' credibility is an essential factor in the case at bar, and its evaluation depends largely upon observation of their testimony."

■ Appellant argues in her first assignment of error that the trial court erred by holding that the compensation paid to appellees was not excessive. Appellant argues that compensation received by appellees did not bear a reasonable relationship to the value of the services rendered. R.C. 1701.60(A)(3) provides:

"(3) The directors, by the affirmative vote of a majority of those in office, and irrespective of any financial or personal interest of any of them, shall have authority to establish reasonable compensation, that may include pension disability, and death benefits, for services to the corporation by directors and officers, or to delegate such authority to one or more officers or directors."

Thus, the law requires only that the compensation in question be reasonable. This court held in *Norris v. Weir* (1987), 35 Ohio App.3d 110, 520 N.E.2d 10 that:

"Whether a particular salary constitutes reasonable compensation is a factual question. The court must consider each case separately on its merits, based entirely upon the particular set of facts as disclosed by the evidence." See, also, *Holmes v. Republic Steel Corp.* (1948), 84 Ohio App. 442, 39 O.O. 542, 84 N.E.2d 508.

In considering the facts of this case and all the evidence presented, we conclude that appellant did not sustain her burden of proof that the compensation was unreasonable. The record shows that appellees have managed the corporation

since 1966. From 1967 until 1982 they had a combined annual salary of $5,700. The record shows that Robert's annual salary before 1982 was less than what his father received as compensation before his death.

In 1982 their annual salary increased to a combined total of $18,000, where it remained until the lawsuit. While the record reveals that there is a substantial increase in appellees' annual compensation, without evidence affirmatively showing the unreasonableness of the compensation we cannot substitute our judgment for that of the trial court or corporate managers. The testimony of appellant's witness, though valuable, was insufficient to compel the conclusion that appellees' compensation was unreasonable. Appellant's expert witness did not present any evidence comparing appellees' compensation to that of similar owners in the local market. Appellant's expert witness centered his testimony on the value of appellees' time if they were working for another company, but they were not working for another company. A better comparison could have been what other owners pay themselves in the local market for similar job performance. Furthermore, the expert used a standard of compensation that would be appropriate if the services performed by appellees were done by a management company. The problem with this comparison is that in almost every situation one can find that, compared to what a corporation pays its top executives, a management company can perform the same duties and more for a considerable lesser amount. The mere fact that a management company can be paid less for the same type of services in and of itself is insufficient to render the compensation unreasonable. The expert also did not factor into his evaluation the impact fringe benefits would have on the compensation received by appellees since R.C. 1701.60(A)(3) speaks of compensation which includes fringe benefits. By this we mean that there is no expert testimony as to whether the compensation would still be considered unreasonable taking into account that appellants were not provided any fringe benefits. See *Norris, supra.* Bearing in mind that appellees have received only one increase in their compensation in more than twenty years, without a showing that the compensation received in light of all the circumstances did not bear a reasonable relationship to the value of the services rendered, *Soulas v. Troy Donut University, Inc.* (1983), 9 Ohio App.3d 339, 9 OBR 607, 460 N.E.2d 310, the trial court's finding of reasonable compensation must be sustained.

Appellant argues that the burden of proving reasonableness of the compensation rests with appellees. In support of her argument, appellant cites *Soulas, supra* as controlling. We disagree. As already stated, each case must be considered separately on its merits. The burden of proving excessive compensation in *Soulas* by the noncomplaining parties was due to the facts and circumstances of that case. In *Soulas,* the directors held a meeting in which the minority director was not invited and those present extremely raised their salary.

In the instant case, the compensation in question was begun in 1982 and has remained the same. Appellant has been receiving dividends and annual reports since 1982 and has actual notice or by due diligence should have had a notice of the compensation but did not challenge it until September 1989. We see no reason to apply an exception and upset the general rule that the burden of proof rests on the party challenging the cause. So it is up to appellant to prove that appellees' compensation was excessive and unreasonable. From the evidence presented by appellant, that burden was not met. Appellant's expert witness gave a general overview of what appellees could be paid in the general labor market. He did not, however, state with any certainty that appellees' compensation was unreasonable.

■ Appellant also argues that the compensation received by appellees was illegal because no directors' meetings were held pursuant to R.C. 1701.60(A)(3). We disagree. First, while R.C. 1701.60(A)(3) requires an affirmative vote of the majority of those in office, a review of each case must deal with the practicality of convening a formal meeting in determining when the requirement of R.C. 1701.60(A)(3) has been met. In the instant case, the requirement is met where two out of the three directors who have eighty percent ownership of the corporation met and decided to pay compensation. While it would be more prudent to call a general meeting of all the directors, the result would have been the same had a meeting been called. The challenge should be the reasonableness of the decision of the majority and not that the decision was not made in a formal meeting of all the directors, especially in the instant case where all the directors never had a formal meeting since the beginning of the corporation. We therefore do not read the court's decision in *Schuckman v. Rubenstein* (C.A.6, 1947), 164 F.2d 952, 39 O.O. 406, certiorari denied (1948), 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151, cited by appellant, as requiring that a formal meeting of the board of directors be convened before any decision is made by the majority of those in office. Since there is no overwhelming evidence that appellees' compensation did not bear a reasonable relationship to the value of services they rendered, we cannot upset the trial court's finding.

Appellant argues that the trial court's judgment is against the manifest weight of the evidence. A judgment supported by some competent, credible evidence shall not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

The record of appellees' services to the corporation is documented. The record also reveals that Edgar, the founder and the majority shareholder before Robert

took over the corporation, and Esther, who worked as the secretary for the corporation, received compensation for their services.

Accordingly, appellant's first assignment of error is overruled.

## III

Appellant argues in her second assignment of error that the trial court erred by finding for appellees where the original judge who heard the testimony of witnesses failed to file findings of fact and conclusions of law. She further argues that the successor judge did not possess the power to render judgment on the case "without indicating that the predecessor judge evaluated the testimony." Appellant cites Civ.R. 63(B) as controlling. Civ.R. 63(B) reads as follows:

"AFTER VERDICT OR FINDINGS. If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge, or in the case of a single-judge division by the chief justice of the supreme court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial."

C.P.Sup.R. 4 provides as follows:

"Assignment System

"For the purpose of these rules, the individual assignment system is that system whereby, upon the filing in, or transfer to, a division of the court of a civil case, or upon arraignment in a criminal case, a case is immediately assigned by lot to a judge thereof, who thus becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. Under such system, all preliminary matters, including requests for continuances, must be submitted for disposition to the judge to whom the case has been assigned, or if the assigned judge is unavailable, to the administrative judge.

"Each multi-judge division of each court of common pleas shall adopt the individual assignment system as defined herein for the assignment of all cases to judges of the division for disposition."

The Cuyahoga County Court of Common Pleas, General Division, in an attempt to comply with C.P.Sup.R. 4, promulgated its own local rules, which provide in Loc.R. 15 as follows:

"Assignment of Civil Cases for Trial

"(A) All civil cases shall be assigned to a judge by drawing a card from a sealed deck handled by the Clerk under the supervision of the Court Administra-

tor. The deck shall be constructed so as to insure that the identity of the next judge's name in the deck is unknown until the card is drawn.

"(B) It shall be the duty of the individual judge to handle all court activity, including motions and emergency matters, status hearings, and pretrials, trials, etc. associated with the cases assigned to him."

The law is thus clear that, barring an unforeseen circumstance, the judge assigned to a case retains jurisdiction over that case from its inception until its final disposition.

This court dealt adequately with the legality of case reassignment in *Berger v. Berger* (1981), 3 Ohio App.3d 125, 3 OBR 141, 443 N.E.2d 1375, where we held that "reassignment of any case must be accompanied by a journal entry executed by the administrative judge which states a justifiable reason for transferring responsibility for the case to another judge. Absent such an entry, the judge assuming to act has no authority and his rulings are voidable on timely objection by any party."

■ The record in the instant case reveals that the original judge assigned to the case stayed with the case until its conclusion. The record seems to indicate that the original judge made findings of facts and conclusions of law but did not sign them.[1] Appellant disputes this by arguing that since the transcript was not transcribed before April 12, 1991, the original judge could not have made the findings of fact and conclusions of law that were journalized on March 14, 1991. We are bound by the record before us no matter how convincing a contrary argument outside the record may seem. The trial court's final judgment at the conclusion of a case is not dependent on the availability of a transcript. The transcript is more relevant for appellate review purposes than it is for the determination of the trial court's power to render judgment. Therefore, we hold that a transcript of a trial court proceeding is not a prerequisite to that court's findings of fact and conclusions of law in a case where such findings of fact and conclusions of law are required.

■ Now we turn to the journal entry itself. The administrative judge who signed the journal entry, while within his right to sign, see *State v. Blythewood* (1978), 60 Ohio App.2d 300, 14 O.O.3d 262, 396 N.E.2d 1068, stated the following: "ASSIGNED JUDGE UNAVAILABLE."

We held in *Berger, supra* that a justifiable reason for the transfer of a case to another judge must be stated in a written entry that leaves no doubt as to what the entry means. This requirement not only satisfied the Rules of Superinten-

---

1. Our conclusion is based on the trial court's notes and handwritten findings of facts and conclusions of law made by the original trial judge.

dence for Courts of Common Pleas but also aids the reviewing court in making a decision when the transfer is challenged. In the instant case the administrative judge's stamp, which states "ASSIGNED JUDGE UNAVAILABLE," states a conclusion and not a reason as contemplated by the rules and case decision; therefore, it fails for lack of proper reason.

Therefore, since the journal entry failed to comply with C.P.Sup.R. 4 and case law, the assignment is voidable. See *United States v. Valente* (1924), 264 U.S. 563, 44 S.Ct. 411, 68 L.Ed. 850. See, also, *Bowman v. Alvis* (1950), 88 Ohio App. 229, 44 O.O. 389, 96 N.E.2d 605.

Since the record of the assignment in the within case does not affirmatively show any bad faith or fraud, appellant has to show that she too complied with the rules of practice before we can reverse the improper assignment.

In *Berger, supra,* we held that:

"[A]ny party objecting to reassignment must raise that objection at the first opportunity to do so. If the party has knowledge of the transfer with sufficient time to object before the new judge takes any action, that party waives any objection to the transfer by failing to raise that issue on the record before the action is taken. If the party first learns about the transfer after action is taken by the new judge, the party waives any objection to the transfer by failing to raise that issue within a reasonable time thereafter. The definition of a reasonable time may well be controlled by time limits for motions for rehearing, reconsideration, or a new trial." *Id.* at 131, 3 OBR at 147–148, 443 N.E.2d at 1382.

■ In the instant case, the record shows that appellant failed to object to the assignment or the signed findings of fact and conclusions of law of which she now seeks review on appeal.

Appellant also failed to file a motion for a new trial, or a motion for relief from judgment pursuant to Civ.R. 60(B), to which she was entitled. Having failed to timely object and claim the error at the trial level, appellant waived her right to assert such error on appeal. See *Reichert v. Ingersol* (1985), 18 Ohio St.3d 220, 18 OBR 281, 480 N.E.2d 802. See, also, *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

Since there is no evidence of fraud or a clear abuse of power by appellees, the trial court properly used restraint by not interfering with the parties' compensation dispute.

Accordingly, appellant's second assignment of error is also overruled. Judgment affirmed.

## IV

Appellees and cross-appellants filed the following assignments of error:

"The trial court erred in not dismissing appellant's action as being barred on the basis of estoppel and laches.

"The trial court erred in not dismissing appellant's claim on the basis that appellant was not a proper party to bring the action.

"The trial court erred in granting attorney's fees to appellant's counsel without holding a separate hearing and without a showing that counsel's actions benefitted the corporation."

Since cross-appellants' first and second assignments of error would be disposed of under the same legal reasoning, they are treated together.

Cross-appellants in the first assignment of error argue that the trial court should have dismissed cross-appellee's complaint because she did not bring her suit in a "timely fashion." They argue that cross-appellee knew for many years that the corporation was paying compensation to them but failed to challenge it in court.

Cross-appellants further argue in their second assignment of error that the trial court erred by not dismissing the action when evidence showed that cross-appellee was not a proper party to the action.

The Ohio Supreme Court in *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, held, at paragraph eight of the syllabus, that:

"Where the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the brief thereof, App.R. 12(B) requires the appellate court to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee. The judgment or final order of the trial court should, under such circumstances, be affirmed as a matter of law by the court of appeals."

On the authority of *Pang*, we decline to consider cross-appellants' first and second assignments of error, and they are overruled on the grounds that, given our disposition of this case, cross-appellants are not prejudiced.

## V

Cross-appellants argue in their third assignment of error that the trial court erred by awarding attorney fees to cross-appellee's counsel without a separate hearing or any evidence to show that the corporation benefitted from cross-appellee's complaint. We agree on both counts.

■ The admission of evidence for an award of a reasonable attorney fee, which is within the discretion of the trial court, *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 17 OBR 512, 479 N.E.2d 315, is improper during the parties' presentation of the case in chief. *Davis v. Owen* (1985), 26 Ohio App.3d 62, 26 OBR 236, 498 N.E.2d 202. The issue of attorney fees should be decided in a separate hearing for the following reasons: (1) the issue is a separate cause from the case in chief; (2) it requires proof distinct from the injury complained of in the case in chief; (3) it puts counsel, who in the case in chief is an advocate, on a witness stand to prove the value of his services, see *In re Estate of Klood* (1977), 55 Ohio App.2d 67, 9 O.O.3d 225, 379 N.E.2d 256; *David MacPherson Assoc., Inc. v. Media Marketing Advertising, Inc.* (July 27, 1983), Clermont App. No. CA 1065, unreported, 1983 WL 4433 (holding that attorney fees must be based on evidence adduced); and (4) deciding separately would avoid confusion of issues, and prevent an arbitrary and unjustified award. As the court held in *Davis, supra,* citing *Stevenson v. Morris* (1881), 37 Ohio St. 10:

"[T]he actual value of reasonable attorney fees cannot be proven by evidence during the course of the trial. Although generally aware of the need for evidence on the question of attorney fees, the Ohio Supreme Court decided that such evidence should not be admitted because of its tendency to enlarge, complicate and confuse the issues at trial." 26 Ohio App.3d at 62, 26 OBR at 236, 498 N.E.2d at 202; see, also, *Huntington Bank v. Cartwright* (Oct. 6, 1982), Fayette App. No. 79–CA–3, unreported, 1982 WL 3235.

■ In the instant case, the record shows that the trial court did not conduct a separate hearing to determine reasonable attorney fees. Rather, the court permitted cross-appellee's counsel to testify as to his fees at the close of cross-appellants' case in chief. We consider the trial court's action, in light of our holding, to be improper and prejudicial to cross-appellants, who had no notice and did not prepare to argue the issue of attorney fees during the presentation of the case in chief.

Cross-appellants further argue that the award of attorney fees to cross-appellee by the trial court was improper because cross-appellee did not present any evidence that the corporation benefitted from the lawsuit.

The Ohio Supreme Court held in *State ex rel. Kabatek v. Stackhouse* (1983), 6 Ohio St.3d 55, 56, 6 OBR 73, 74, 451 N.E.2d 248, 249, that:

" 'The general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith. See *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177 [75 O.O.2d 224, 347 N.E.2d 527]; *State, ex rel. Grosser, v. Boy* (1976), 46 Ohio St.2d 184 [75 O.O.2d

228, 347 N.E.2d 539].' *State, ex rel. Crockett, v. Robinson* (1981), 67 Ohio St.2d 363, 369 [21 O.O.3d 228, 232, 423 N.E.2d 1099, 1103]."

█ Thus, Ohio courts are reluctant to award attorney fees without a statutory authorization to the prevailing party, as one court puts it, "unless the losing party acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons." *Buller v. Respicare, Inc.* (1987), 39 Ohio App.3d 17, 528 N.E.2d 1282. This general rule has remained the same for all cases and even more so in a derivative action. While attorney fees are recoverable in shareholders' derivative actions, *Apicella, supra,* see, also, *Truman v. Coghlin Mach. & Supply Co.* (1919), 11 Ohio App. 220, 30 Ohio C.C. (N.S.) 425, the party seeking the fees must demonstrate convincingly the benefit the corporation derived from the lawsuit. While we concede that this judge-created exception has been used to award expenses to a successful party, see *Fleischmann v. Maier Brewing Co.* (1967) 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, the corporate-benefit rule applies to any party in a derivative action. The benefit to the corporation must be demonstrated before recovery of attorney fees can be granted.

In *Griesse v. Lang* (1931), 37 Ohio App. 553, 558, 175 N.E. 222, 223 the court, faced with determining the appropriateness of attorney fees being paid to the prevailing director's counsel, held that:

" 'When such an expenditure is questioned, the directors have the burden of showing that some interest of the corporation was in fact threatened, and that for that reason the expenditure was justified.' "

The court continued:

"The burden being on the defendant directors to show that the corporation received some benefit from the expenditure of attorney fees, or that some interest of the corporation was conserved, and nothing in that regard being shown, and it also appearing that there was no action taken by the stockholders to authorize the payment, the action of the defendant directors in authorizing the payment out of the corporation treasury was unauthorized and illegal." *Id.*

While the benefit conferred in many instances is expressed in monetary terms, the corporation can also derive substantial benefit that is not necessarily convertible to money. An example would be a derivative suit that has become moot, in which attorney fees are still recoverable as long as a substantial benefit has been conferred upon the corporation, and the fact that the litigation was not brought to a successful completion is, therefore, inconsequential. *Kahan v. Rosensteil* (C.A.3, 1970), 424 F.2d 161, certiorari denied (1970), 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290.

Quoting the United States Supreme Court holding in *Mills v. Elec. Auto-Lite Co.* (1970), 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593, which cites *J.I. Case Co. v.*

*Borak* (1964), 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, the Sixth Circuit Court of Appeals stated in *Ramey v. Cincinnati Enquirer, Inc.* (C.A.6, 1974), 508 F.2d 1188, 1195, that:

" 'The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses.' "

In the instant case, a careful review of the record does not support the trial court's award of attorney fees. Cross-appellee did not demonstrate any benefit the corporation derived from her lawsuit. Cross-appellee argues that her suit benefitted the corporation because:

"[T]he shareholders will be better informed of the business of the corporation since shareholders' meetings are now conducted; the officers and directors will be more precise in their practices now that directors meetings are necessary; and the shareholders will not be trustworthy of the majority shareholder, offices, and directors. All of these aspects benefit the corporation by preventing any further wrongdoing."

Cross-appellee's argument has no merit. Shareholders' information about business activities of the corporation is not a benefit to the corporation as contemplated by the corporate-benefit rule. A shareholder has a duty to inquire about corporate activities and be well informed of how his investment is being handled. It is more of a benefit to the shareholder to know the activities of the corporation than it is for the corporation itself. Cross-appellee's argument that the prevention of wrongdoing benefits the corporation is acceptable only when wrongdoing is proved. In the instant case cross-appellee's inability to prevail is a testament that no wrongdoing occurred.

Since cross-appellee did not present any evidence of advantage or benefit to the corporation by her lawsuit to warrant the award of attorney fees, the trial court's award of attorney fees is without foundation.

Accordingly, the trial court's judgment is reversed on the award of attorney fees and affirmed on all other issues.

*Judgment accordingly.*

PATTON, P.J., and MATIG, J., concur.