[Cite as *Sander v. Country Brook Homeowners' Assn., Inc.*, 2020-Ohio-1555.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| MICHAEL K. SANDER, et al., | : | CASE NO. CA2019-08-079 |
| Appellants, | : | O P I N I O N<br>4/20/2020 |
| | : | |
| - vs - | : | |
| | : | |
| COUNTRY BROOK HOMEOWNERS'<br>ASSOCIATION, INC., | : | |
| Appellee. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV90125

Miller, Walker & Brush, LLP, Michael B. Miller, 2233 Miamisburg-Centerville Road, Dayton, Ohio 45459, for appellants

Phillips Law Firm, Alfred William Schneble III, 11 West Monument Avenue, Suite 402, Dayton, Ohio 45402, for appellee

**M. POWELL, J.**

{¶ 1} Appellants, Michael and Katherine Sander ("the Sanders"), appeal a decision of the Warren County Court of Common Pleas granting judgment in favor of appellee, the Country Brook Subdivision Homeowners' Association ("HOA"), in a declaratory judgment action.

{¶ 2}  The Sanders are the owners of a home located in Country Brook Subdivision, a residential subdivision in Warren County, Ohio.  The Sanders' home is subject to the Eleventh Amended Declaration of Covenants, Conditions and Restrictions for Country Brook Subdivision (the "Declaration").  The Declaration requires prior HOA approval of improvements, alterations, and additions upon property within the Country Brook Subdivision.  The HOA is an Ohio nonprofit corporation pursuant to R.C. Chapter 1702. The HOA is under the direction of a board consisting of three trustees ("the Trustees").

{¶ 3}  On May 26, 2017, the Sanders submitted an application to the Trustees for installation of solar panels on the rear slope of their home (the" Application").  At the time, the Trustees were Tim Edmunds, Andrew Heekin, and Sheila Willhoite.  After its submittal to the Trustees, the Application was forwarded to architect Sheri Scott for review.  On May 31, 2017, Scott forwarded her review to Edmunds, recommending that the Application be approved on the condition the solar panels be installed on the "rear slopes of the home." The Application and the architectural review were emailed to and reviewed by the Trustees. Thereafter, Edmunds telephoned Heekin to discuss the Application.  Edmunds further spoke separately with Willhoite concerning the Application.  The Trustees agreed that the Application be disapproved.  Heekin and Willhoite never spoke with each other concerning the Application prior to the time it was decided that it would not be approved.  A letter disapproving the Application was prepared and circulated among the Trustees.  The letter, dated June 3, 2017, was sent to the Sanders (the "Denial Letter").

{¶ 4}  Thereafter, the Sanders filed a seven-count complaint against the HOA. This appeal concerns only their first cause of action seeking declaratory relief. The Sanders allege that the disapproval of their Application was not in accordance with the Declaration because the HOA did not establish a Design Review Committee ("DRC") to review their Application,  and the HOA did not otherwise properly act to approve or disapprove their

Application within 14 days. As to this latter claim, the Sanders' complaint alleged that the disapproval of their Application was not the product of a formal meeting of the Trustees and not in accordance with the procedure set forth in R.C. 1702.25 for acting without a meeting.

{¶ 5} On October 25, 2018, a bench trial was conducted before a magistrate upon the Sanders' request for a declaratory judgment. The magistrate heard testimony from each of the Trustees, Michael Sander, and Joseph Rueth, the HOA's attorney who authored the Declaration.

{¶ 6} On January 28, 2019, the magistrate ruled in favor of the HOA. The magistrate rejected each of the Sanders' arguments in support of their claim for declaratory relief. The magistrate construed the Declaration as permitting the Trustees to review and act upon applications for architectural changes in lieu of establishing a DRC. The magistrate further rejected the Sanders' argument that the Trustees did not comply with R.C. 1702.25 when they disapproved the Application without a meeting. The magistrate determined that email exchanges among the Trustees approving the Denial Letter satisfied the requirements of R.C. 1702.25 for acting without a formal meeting.

{¶ 7} The Sanders filed objections to the magistrate's decision. By judgment entry of May 31, 2019, the trial court overruled the objections. The trial court found that the Declaration authorized either the Trustees or the DRC to consider applications for exterior additions or alterations. Noting that the Sanders filed their Application with the Trustees, as opposed to a DRC, the trial court found that "the Board [of Trustees] was well within its rights to accept or reject the application."

{¶ 8} Regarding the Trustees' failure to comply with R.C. 1702.25 in acting without a meeting, the trial court determined that the Trustees' Denial Letter in conjunction with their email exchanges complied with the requirements of R.C. 1702.25.

{¶ 9} The Sanders appeal from the trial court's May 31, 2019 judgment entry,

asserting two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY CONCLUDING THAT THE COUNTRY BROOK HOMEOWNERS' ASSOCIATION, INC. BOARD OF TRUSTEES SATISFIED THE STATUTORY REQUIREMENTS FOR ACTING OUTSIDE OF A FORMAL MEETING IN CONNECTION WITH APPELLANTS' APPLICATION AND THEREFORE FAILED TO APPROVE OR DISAPPROVE THE APPELLANTS' APPLICATION WITHIN FOURTEEN DAYS OF SUBMITTAL THUS MAKING APPROVAL NOT REQUIRED.

{¶ 12} The Sanders challenge the trial court's finding that the Trustees' disapproval of the Application without a meeting complied with R.C. 1702.25, arguing that such finding is not supported by the evidence. We construe this assignment of error as a manifest weight of the evidence challenge.

{¶ 13} "When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context." *Ford v. West*, 12th Dist. Fayette No. CA2017-11-025, 2018-Ohio-2626, ¶ 9; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Thus, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Carson v. Duff*, 12th Dist. Fayette Nos. CA2017-03-005 and CA2017-03-007, 2017-Ohio-8199, ¶ 11, citing *Eastley* at ¶ 20. "A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *Carson* at ¶ 11.

{¶ 14} As a nonprofit corporation under Ohio law, the HOA is subject to R.C. Chapter 1702. R.C. 1702.25 provides the procedure the directors of a nonprofit corporation must

follow to take action without a formal meeting. R.C. 1702.25 states in relevant part that

> (A) Unless the articles or the regulations prohibit the authorization or taking of any action of * * * the directors without a meeting, any action that may be authorized or taken at a meeting of * * * the directors, as the case may be, may be authorized or taken without a meeting with the affirmative vote or approval of, and in a writing or writings signed by, all of the * * * directors, as the case may be, who would be entitled to notice of a meeting for that purpose * * * [.] Any such writing shall be filed with or entered upon the records of the corporation.

> (B) Any transmission by authorized communications equipment that contains an affirmative vote or approval of the person described in division (A) of this section is a signed writing for purposes of this section. The date on which that transmission by authorized communications equipment is sent is the date on which the writing is signed.

{¶ 15} Subdivision (A) of the statute allows the directors of a nonprofit corporation (the Trustees here) to take any action authorized in a meeting without holding a meeting so long as: all Trustees agree upon the action to be taken (the unanimity requirement); there is a "signed writing" from each Trustee containing his or her affirmative vote upon the action to be taken (the "signed writing" requirement); and such "signed writing" is filed with or entered upon the corporation's records (the memorialization requirement). All three requirements must be satisfied in order to comply with the statutory requisites for effectively taking action without a meeting. The Sanders' first assignment of error implicates the "signed writing" and memorialization requirements.

{¶ 16} R.C. 1702.25(B) provides that the requirement of a "signed writing" is satisfied by "any transmission by authorized communications equipment [containing] an affirmative vote or approval" of a corporate officer to corporate action. "Authorized communications equipment" is defined as "any communications equipment that provides a transmission, including, but not limited to, by telephone, telecopy, or any electronic means, from which it can be determined that the transmission was authorized by, and accurately reflects the

intention of, the member of, the member or director involved and, with respect to meetings, allows all persons participating in the meeting to contemporaneously communicate with each other." R.C. 1702.01(Q). Thus, a vote on an issue cast by telephone or by email would qualify as a "signed writing" under the statute.

{¶ 17} The evidence reveals that upon receiving the Application and reviewing the architect's review, Heekin and Willhoite spoke separately with Edmunds concerning the Application. Edmunds and Heekin spoke by telephone. Edmunds' conversation with Willhoite may have been by telephone or face-to-face.[1] In these separate conversations, the three Trustees agreed that the Application should be disapproved. Thereafter, Edmunds began working with Rueth to produce the Denial Letter. At some point, Edmunds involved Heekin and Willhoite. Edmunds acknowledged, without more specificity, that the Denial Letter "was a product of some communication" among the Trustees. Heekins testified that the Denial Letter was a product of an unspecified number of conversations, some of which were "face-to-face." Willhoite testified that drafts of the Denial Letter were circulated among the Trustees by email. When pressed upon the manner in which the Denial Letter was produced and agreed upon by the Trustees, Willhoite testified, "There may have been [some emails]. I don't recall at what point some emails were starting to correspond when we got the attorneys involved." Ultimately, all three Trustees indicated in some manner their assent to the Denial Letter. However, the Denial Letter is neither signed by a single Trustee nor authenticated with a "signed writing" from any of the Trustees containing their approval of the letter.

{¶ 18} The Trustees' testimony does not support a finding that there is a "signed writing" from each of the Trustees containing their vote to disapprove the Application as

---

1. Willhoite testified that "I don't know if it was in phone or in the side yard or – it could have been face-to-face."

- 6 -

provided in R.C. 1702.25(B). The "signed writing" requirement is not satisfied by the mere exchange of emails concerning the Application. If an email is to constitute a "signed writing" under R.C. 1702.25, it must contain "an affirmative vote or approval" of the corporate action to be taken. None of the emails claimed as "signed writings" were offered into evidence. In their testimony concerning the email exchanges, the Trustees were unable to provide specificity regarding the emails' origination and content. Absent the emails or information concerning their origination and content, it is not possible to determine that each of the three Trustees voted to disapprove the Application by email (i.e., by "authorized communications equipment") as found by the trial court.

{¶ 19} Full compliance with R.C. 1702.25 requires that the emails claimed to be "signed writings" be "filed with or entered upon the records" of the HOA. R.C. 1702.25(A). Thus, if the emails exist, they must be within the possession and control of the HOA if it complied with R.C. 1702.25. The Sanders presented evidence that the purported emails were not identified in response to their requested discovery, raising an issue as to their existence or whether they were preserved in the corporate records.[2] Under these circumstances, it is reasonable to expect that the HOA would have produced the documents under its control relating to the central issue of the case. The absence of this documentation undermines the trial court's conclusion that the R.C. 1702.25 "signed writing" and memorialization requirements were satisfied by email exchanges among the Trustees.

{¶ 20} There is scant case law construing R.C. 1702.25, and none that we have discovered construing subdivision (B) of the statute. This court has observed that "R.C. 1702.25 allows for members to take action without a meeting, but, only with a signed writing

---

2. The HOA's responses to the Sanders' interrogatories were admitted into evidence as the Sanders' Exhibit 1. Interrogatory No. 2 requested the HOA to identify all documents supporting defenses set forth in its answer to the complaint; interrogatory No. 13 requested the HOA to identify all documents it intended to introduce at trial. The HOA's response in both instances was a reference to Appendices A-D. There is no Appendix A and Appendices B-D do not identify emails satisfying the "signed writing" requirement.

by the members which is filed or entered in the records[.] * * * Clearly, the voting outside of a meeting in this case did not meet this requirement as there are no signed writings by members authorizing a vote to remove the three board members outside of a meeting." *State ex rel. Gmoser v. Village at Beckett Ridge Condominium Owners' Assn.*, 12th Dist. Butler No. CA2016-02-035, 2016-Ohio-8451, ¶ 26. Although *Beckett Ridge Condominium* does not involve a consideration of R.C. 1702.25(B), it confirms the necessity of a "signed writing" if corporate officers are to act without a meeting.

{¶ 21} As detailed above, testimony regarding the Trustees' disapproval of the Application indicates there were in-person discussions, telephone conversations, and email exchanges among the Trustees.[3] The record suggests that these communications were so numerous and conducted in so many mediums that the Trustees lacked a precise recollection of the relevant events. The most which may be discerned from the Trustees' testimony is that they determined to disapprove the Application based upon their numerous communications, some of which were emails. Although all three Trustees indicated their approval of the Denial Letter, the record does not reflect whether such approval was transmitted by email or otherwise. This evidence fails the "competent, credible evidence going to all essential elements of the case" manifest weight of the evidence standard.

{¶ 22} Section 11.01 of the Declaration provides

> No building, swimming pool, tennis court, fence, wall, patio, deck or other structure or improvement shall be commenced, erected or maintained on the Property, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing nature, kind, shape, color, height, materials and location of the same shall have been

---

3. In arguing how the record supports the trial court's finding that the communications among the Trustees satisfied R.C. 1702.25, the HOA does not rely upon the trial record but upon affidavits submitted in prior summary judgment proceedings and the deposition testimony of the Trustees and Rueth. None of those depositions are in the trial record. Although the depositions of Edmunds and Heekin were filed in the trial court and referred to by the Sanders' attorney during cross-examination of witnesses, the HOA objected to their admission into evidence and the Sanders' attorney withdrew them. The depositions of Willhoite and Rueth were not even filed in the trial court.

submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Trustees, or by an architectural committee known as the Design Review Committee, composed of three (3) representatives appointed by the Board of Trustees. In the event said Board of Trustees or its designated committee fail to approve or disapprove such design and location within fourteen (14) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully, complied with.

{¶ 23} Because the Trustees failed to comply with R.C. 1702.25 in acting to disapprove the Application without a meeting, the disapproval is ineffective. Thus, as the Trustees have not acted to disapprove the Application within 14 days as provided in Section 11.01 of the Declaration, approval is not required, and the Sanders may proceed with the installation of the solar panels on their home in accordance with their Application.

{¶ 24} In addition to claiming compliance with R.C. 1702.25, the HOA argues it was not necessary to hold a meeting to disapprove the Application, and further argues that the disapproval of the Application should be upheld because the Trustees acted in good faith.

{¶ 25} The HOA cites two opinions of the Eighth Appellate District in support of its argument that a formal meeting was unnecessary to disapprove the Application. *See 2115-2121 Ontario Bldg., L.L.C. v. Anter*, 8th Dist. Cuyahoga Nos. 98255 and 98296, 2013-Ohio-2993; and *Mlinarcik v. E.E. Wehrung Parking, Inc.*, 86 Ohio App.3d 134 (8th Dist.1993).

{¶ 26} In *Ontario Bldg.*, the court of appeals found that the issuance of an additional share of stock in the corporation without a formal meeting was valid because it had been ratified by the directors of the corporation. Setting aside the issue of whether ratification may be used as a means to legitimize unauthorized corporate action to the detriment of another, any ratification in the case at bar occurred well after expiration of the 14-day period within which the Trustees were required by the Declaration to act upon the Sanders'

Application.[4]  In any event, the HOA does not argue that it later ratified the disapproval of the Application.

{¶ 27} The HOA further cites *Mlinarcik*, arguing that the disapproval of the Sanders' Application should be upheld because the "[e]mphasis should be on the decision of the majority and not that the decision was not made in a formal meeting."  *Mlinarcik* does not stand for such a proposition as a tenet of corporation law.  *Mlinarcik* involved a challenge to the compensation of two directors of the corporation and a construction of R.C. 1701.60(A)(3) which provides that "[t]he directors, by the affirmative vote of a majority of those in office * * * shall have authority to establish reasonable compensation * * * for services to the corporation by directors and officers[.]"  Observing that a formal meeting of the directors of the corporation had not been held since its formation in 1948, the court of appeals found that R.C. 1701.60(A)(3) is satisfied "where two out of the three directors who have eighty percent ownership of the corporation met and decided to pay compensation." *Mlinarcik*, 86 Ohio App.3d at 140.  *Mlinarcik* was a fact-specific ruling with little application beyond its factual context.

{¶ 28} The HOA cites R.C. 1702.30 in support of its good faith argument.  R.C. 1702.30(B) requires that directors of a corporation act in good faith and in the best interests of the corporation.  The HOA argues the evidence clearly demonstrates that the Trustees acted in good faith in disapproving the Sanders' Application and suggests that this is reason to uphold the disapproval of the Application.  However, there is nothing in the language of the statute or in the case law which provides that unauthorized corporate action be upheld because it was taken in good faith.  R.C. 1702.30(A)(3) merely provides a standard of

---

4. On March 8, 2018, the trial court granted summary judgment in favor of the Sanders on Count II of their complaint for a declaratory judgment that the Trustees must respond to the Application by identifying the manner in which the solar panel project fails to meet the specifications for approval.  The Trustees subsequently complied with the judgment by convening a meeting and unanimously approving minutes specifying the reasons for the denial of the Application.

conduct for corporate directors.

{¶ 29} The Sanders have established by a preponderance of the evidence that the Trustees failed to comply with R.C. 1702.25 in disapproving their Application without a meeting. The trial court's ruling to the contrary was against the manifest weight of the evidence. Because the Trustees failed to act in accordance with R.C. 1702.25, their disapproval of the Sanders' Application is not effective. Consequently, the Trustees failed to approve or disapprove the Sanders' Application within the requisite 14-day period which, in turn, dispenses with the need for formal approval under Section 11.01 of the Declaration. Based upon the foregoing, we find that the Sanders may proceed with the installation of solar panels upon their home in accordance with their Application.

{¶ 30} The Sanders' first assignment of error is sustained.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED BY NOT CONCLUDING THAT COUNTRY BROOK HOMEOWNERS' ASSOCIATION, INC. HAD NO DESIGN REVIEW COMMITTEE AND THEREFORE FAILED TO APPROVE OR DISAPPROVE THE APPELLANTS' APPLICATION WITHIN FOURTEEN DAYS OF SUBMITTAL THUS MAKING APPROVAL NOT REQUIRED.

{¶ 33} In view of our resolution of the first assignment of error, the second assignment of error is moot. *See* App.R. 12(A)(1)(c).

{¶ 34} The trial court's judgment is accordingly reversed. Pursuant to App. R. 12(B), judgment is rendered on behalf of the Sanders in accordance with this Opinion.

HENDRICKSON, P.J., and RINGLAND, J., concur.