NORRIS, APPELLANT, *v.*
WEIR ET AL., APPELLEES.

(No. 52058—Decided
April 27, 1987.)

*Thomas J. Dorchak,* for appellant.
*Thomas P. Meaney, Jr.,* for appellees.

PRYATEL, J. On November 10, 1981, Joseph E. Norris, Sr. (hereinafter "Norris") filed a shareholder derivative action "on behalf of himself and all other stockholders of Norris Brothers, Inc." against Norris Brothers Company, Inc., his nephew Bernard Weir, his sisters Nora Morse and Catherine Weir, his sister-in-law LaVerne Norris, and his niece Catherine McBride. Defendants Nora Morse, Catherine McBride, LaVerne Norris and Catherine Weir were shareholders in Norris Brothers Company, Inc. and, together with Bernard Weir, comprised the board of directors.

Norris alleged that, on September 1, 1981, he requested that the board of directors institute action to remedy his complaints, but such demand was refused. Norris alleged as claims (1) that the directors voted themselves excess salaries so as to constitute an unlawful dividend; (2) that the directors hired friends and relatives as employees at excess salaries constituting a waste of corporate assets; (3) that the directors entered into a profit-sharing plan which constituted an unlawful dividend or waste of corporate assets; (4) that the directors received money for legal fees and personal expenses constituting an illegal dividend or waste of corporate assests; and (5) that the directors had refused to allow Norris access to the Norris Brothers Company, Inc. offices and had denied Norris access to information about the company. Norris prayed for return of the monies which he alleged were unlawfully paid, and for an injunction enjoining payment of excess compensation, benefits and personal expenses to the defendants.

On November 2, 1983, the trial court granted Norris' motion to file an amended complaint which alleged as an additional claim that the directors caused the corporation to file inaccurate information with financial institutions for the purpose of seeking

loans. By joint answers, defendants denied all the material allegations of both the complaint and amended complaint.

Trial was held on December 16 and 17, 1985, and was continued until April 9, 1986. The following evidence was adduced at trial.

In July 1935, the Norris family formed a corporation, defendant-appellee Norris Brothers Company, Inc., for the purpose of engaging in the businesses of trucking and rigging. Plaintiff-appellant Norris, a shareholder, served as president in 1975. At that time there were six members of the board of directors. The directors, in addition to Norris, were his sisters, Nora Morse and Catherine Weir, sister-in-law LaVerne Norris, nephew Bernard Weir, and niece Catherine McBride. These directors, with the exception of Bernard Weir, were also shareholders.

In March 1975, LaVerne Norris was elected by the board of directors to an executive position charged with the maintenance of the trucks and equipment of the company. Catherine McBride was also elected to an executive position at that time. During the time that Bernard Weir, Catherine Weir, Catherine McBride, and LaVerne Norris were directors, they were also employed by the company.

In January 1976, the directors of the company voted to remove appellant Joseph Norris from office as president and replace him with Bernard Weir. In March 1976, the directors designated Norris as co-chairman of the board of directors at a salary of $30,000, a salary that was terminated effective December 31, 1976. Norris, however, remained on the board of directors from 1975 to 1983. However, Norris did not attend the directors' meetings on March 30, 1983, May 25, 1983, August 30, 1983, or December 28, 1983, although he admitted that he had notice of the meetings. Norris also did not attend the annual shareholders'

meeting on May 16, 1984, and was not elected as a director for the years 1984, 1985 and 1986.

Norris testified that he had been at odds with the defendants since 1973. Norris admitted that in December 1975, he had filed an action against LaVerne Norris, Catherine Weir, and Catherine McBride to prevent them from assuming their corporate offices. Norris further admitted that in July 1976, he had filed an action against LaVerne Norris, Catherine Weir, Catherine McBride, and Nora Morse seeking a declaration regarding his ownership of shares in the company and seeking damages. Norris also testified that he had instituted a *quo warranto* action in 1976 claiming that his removal as president was without cause. Norris filed another action, in July 1981, against LaVerne Norris, Catherine McBride, and Catherine Weir wherein he sought damages of one million dollars based upon their record as shareholders of the company.

Norris further testified that on September 1, 1981, he attended a directors' meeting at which he asked the board to pursue a suit on behalf of the company with respect to excessive salaries of company employees. The minutes of that meeting indicate that Norris' counsel presented a resolution to the board respecting an alleged wasting of assets, but neither Norris nor his counsel made any presentation in support of the resolution although requested to do so. When counsel for the company requested that Norris' counsel specify the facts upon which the resolution was based, Norris' counsel refused. The resolution did not receive a second, hence there was no further discussion of his request.

Norris also testified that while he was president, he was paid $50,000 per year. Norris did not believe this sum was unfair, and admitted that he had

voted to confirm his salary. Norris conceded that since 1976, the directors had declared several dividends and that Norris has received the same dividends as every other shareholder.

Norris also admitted that he had last visited the company's main office on Davenport Avenue in Cleveland in 1976, and had no firsthand knowledge of what activities and services the individual defendants had rendered to the company.

The evidence offered by Norris regarding the excessiveness of defendants-appellees' salaries was the report and testimony of Kimberley Reynolds, a compensation consultant to Towes, Perrin, Foster & Crosley. Reynolds' testimony was based on published surveys and other data as well as the depositions of four defendants, Catherine McBride, Catherine Weir, LaVerne Norris and Nora Morse. From the depositions, Reynolds attempted to categorize the defendants' responsibilities under a functional heading, and then match this functional heading with a job title in the available survey data. Reynolds testified from her report, admitted into evidence, which included a chart for defendants Catherine McBride, Catherine Weir, LaVerne Norris and Nora Morse, each indicating a list of actual pay received by the individual, so-called "marketplace pay," and the percentage difference between the two categories for the years 1976 through 1985. Reynolds found the actual pay for the defendants was below marketplace pay for 1984 and 1985, slightly above marketplace pay for 1983, and above what she termed the "competitive range" for 1976 to 1982. Reynolds defined "competitive range" as plus or minus fifteen percent of "marketplace pay" for each position. Reynolds conceded that she neither reviewed the entire company pay structure, nor visited the company to observe defendants in performance of their job responsibilities. Reynolds testified that her report was based on local, regional, and national surveys of job responsibilities. The marketplace pay used by Reynolds was the median rather than the average.[1] Reynolds also admitted that her data were not industry-specific, in that they did not refer specifically to the trucking, hauling or assembling industries. Reynolds testified that "[i]t is our position that more than fifty percent of the positions are within plus or minus fifteen percent of the marketplace value," but acknowledged that as much as forty-nine percent of the positions could be *outside* the competitive range. Reynolds admitted that she did not consider defendants' individual years of experience or hours worked in arriving at a marketplace pay figure. Nor did Reynolds consider the fact that none of the four defendants in question received medical insurance or disability insurance. At the end of Norris' case, defendants moved to dismiss the case, and the court took the matter under consideration. On April 22, 1986, the trial court entered final judgment granting defendants' motion, finding that Norris had failed to establish standing pursuant to Civ. R. 23.1 and, in any event, there was a "lack of evidence."

From that decision Norris timely appeals, and assigns four errors for consideration.

Assignment of Error No. I

"I. The trial court erred in denying a request for substitution of the estate of a deceased party prior to the commencement of the trial."

---

[1] The median pay is the rate with respect to which an equal number of salaries are above and an equal number below. This is distinct from the average which is the mathematical average of the total salaries divided by the number of salaries averaged.

Prior to the commencement of trial, appellant made a request for substitution of parties (pursuant to Civ. R. 25) because of the death of defendant Nora Morse (on October 2, 1985). This was denied by the court as a ground used for continuing the action.

When this case finally came to trial on December 16, 1985, it was more than four years old. Appellant's first attorney withdrew as counsel of record more than one month prior to trial. Appellant then filed (through his new attorney) a motion for a continuance on December 9, 1985, just one week prior to trial. When this motion was not acted upon by the court, appellant attempted to further delay trial by making the request for substitution of parties.

Under Civ. R. 25(E) the attorney representing the deceased party should suggest upon the record the fact of death within fourteen days after the attorney learns of the death. Within ninety days after the death is suggested on the record, the attorney, following the procedure set forth in Civ. R. 25(A)(1), should serve the motion to substitute the proper party. Should the attorney for the deceased party fail to carry out the foregoing procedure, the opposite party, *i.e.,* "any party" as provided by Civ. R. 25(A)(1), may suggest the fact of death and serve a motion for substitution of parties upon the deceased party's proper representatives. Service of the motion for substitution of a party is carried out under the procedures of Civ. R. 5. Nothing in the rule provides that the court must grant a continuance. When the attorney for defendant Nora Morse did not follow the procedure as outlined in Civ. R. 25(E), it became the affirmative duty of the appellant to suggest the fact of death and serve a motion for substitution upon Nora Morse's representatives.

Furthermore, appellant was not prejudiced by the trial court's denying the request for substitution. R.C. 1701.95(A)(1) provides that directors who authorize an unlawful dividend or distribution, or a distribution of assets to shareholders, "shall be jointly and severally liable to the corporation." Accordingly, the denial of the request for substitution would not adversely affect appellant's ability to collect on a judgment rendered in his favor.

The first assignment of error is overruled.

Assignment of Error No. II

"II. The trial court erred in granting the defendants' motion to dismiss on the grounds of the plaintiff having failed to establish standing under Civ. R. 23.1."

Civ. R. 23.1 states in pertinent part:

"* * * The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. * * *"

At the time the complaint was filed, the appellant (as plaintiff) and defendants Nora Morse, Catherine Weir, Catherine McBride, and LaVerne Norris were the stockholders of all the outstanding capital stock of Norris Brothers Company, Inc.

Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Civ. R. 23.1 representation requirements are:

1. economic antagonisms between the representative and the class;

2. the remedy sought by plaintiff in the derivative action;

3. indications that the named plaintiff was not the driving force behind the litigation;

4. plaintiff's unfamiliarity with the litigation;

5. other litigation pending between the plaintiff and defendants;

6. the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself;

7. plaintiff's vindictiveness toward the defendants; and,

8. the degree of support plaintiff was receiving from the shareholders he purports to represent. *Davis* v. *Comed, Inc.* (C.A. 6, 1980), 619 F. 2d 588, 593-594.

For several of these reasons, appellant cannot maintain a derivative action pursuant to Civ. R. 23.1. First, appellant has been involved in numerous legal actions which relate to the same subject matter. *State, ex rel. Corrigan,* v. *Norris Brothers Co.* (Apr. 21, 1977), Cuyahoga App. No. 36216, unreported; *Norris* v. *Norris Brothers Co.* (May 5, 1977), Cuyahoga App. No. 36072, unreported; *Norris* v. *Norris Brothers Co.* (Jan. 15, 1981), Cuyahoga App. Nos. 41535, 41536, 41537, 41538 and 41619, unreported; *Norris* v. *Norris* (May 26, 1983), Cuyahoga App. No. 45593, unreported.

Second, the actions brought by the appellant arise out of and essentially concern his removal as president of the company.

Third, the long history of litigation involves repetitive factual circumstances which manifest the antagonism appellant has towards the defendants.

Fourth, appellant has failed to garner the support of any fellow shareholders. In fact, all other shareholders are party defendants.

Finally, appellant's contention that Civ. R. 23.1 is unconstitutional is without merit. The remedies provided by R.C. 1701.95 (upon which appellant relies) inure to the benefit of the corporation through a derivative action, not the individual shareholder. "The heart of the action is the corporate claim." *Ross* v. *Bernhard* (1970), 396 U.S. 531, 539. Accordingly, this analysis for considering whether a derivative plaintiff meets the representation requirement provides a reasonable manner in determining when a shareholder may litigate on the corporation's behalf. The "* * * assurance demanded by due process * * * is that the representative party * * * be free of any interest which holds the potential of influencing his conduct of the litigation in a manner inconsistent with the interests of the class. * * *" *duPont* v. *Wyly* (D. Del. 1973), 61 F.R.D. 615, 624. See, also, *Seiden* v. *Nicholson* (N.D. Ill. 1976), 69 F.R.D. 681, 687; *Shulman* v. *Ritzenberg* (D.D.C. 1969), 47 F.R.D. 202, 207; *Davis* v. *Comed, Inc., supra,* 619 F. 2d at 593.

Therefore, the trial court properly disqualified appellant as a fair and adequate shareholder representative pursuant to Civ. R. 23.1.

The second assignment of error is overruled.

Assignment of Error No. III

"III. The trial court erred in granting the defendants' motion to dismiss for any reason."

Appellant cites *Apicella* v. *PAF Corp.* (1984), 17 Ohio App. 3d 245, 17 OBR 512, 479 N.E. 2d 315, for the proposition that "[w]hen a shareholder * * * alleges mismanagement as a result of interlocking dominant directors on both sides of a contract or transaction resulting in harm to the corporation, the burden of proof is on the directors to show that the contract or transaction is fair to the corporation." *Id.* at paragraph three of the syllabus.

*Apicella* was premised on R. C. 1701.60(A)(1), which provides that a transaction between a corporation and a director or officer of that corporation, which is authorized by such officer or director, is not void provided the contract or transaction is fair as to

the corporation as of the time it was authorized or approved by the directors, a committee thereof, or the shareholders.

*Apicella* may be distinguished from the instant case in that *Apicella* dealt with transactions between corporation and director or officer as third parties. This case involves salaries authorized by the directors and paid by the corporation to the directors as employees. R.C. 1701.60 (A)(3) provides:

"(3) The directors, by the affirmative vote of a majority of those in office, and irrespective of any financial or personal interest of any of them, shall have authority to establish reasonable compensation, that may include pension, disability, and death benefits, for services to the corporation by directors and officers, or to delegate such authority to one or more officers or directors."

Therefore, the salaries authorized in this case must only be reasonable. The issue does not rise to the level of self-dealing proscribed by the court in *Apicella*. See, also, *Gries Sports Enterprises, Inc.* v. *Cleveland Browns Football Co.* (1986), 26 Ohio St. 3d 15, 26 OBR 12, 496 N.E. 2d 959.

Whether a particular salary constitutes reasonable compensation is a factual question. The court must consider each case separately on its merits, based entirely upon the particular set of facts as disclosed by the evidence. *Holmes* v. *Republic Steel Corp.* (1948), 84 Ohio App. 442, 39 O.O. 542, 84 N.E. 2d 508. For several reasons here, the appellant has not sustained his burden of proving the compensation was unreasonable. First, appellant's expert relied on national data in comparing salaries, rather than data relevant to the local market. Second, none of the data was industry-specific in the sense of providing a comparison of salary figures in the relevant industry.

Third, the quoted fifteen percent "competitive range" above or below the marketplace figure was not explained by appellant's expert as to why anything outside this range might be unreasonable. Furthermore, the expert admitted only that "more than fifty percent" of the salaries studied fall within this "competitive range." Fourth, the data failed to account for the individual characteristics of the specific employees, such as length of service, loyalty, or past performance. Fifth, the figures represented a comparison of *salaries,* while R.C. 1701.60(A)(3) speaks of *compensation,* which includes fringe benefits. The defendants here were not provided any fringe benefits, which would justify the higher salary. Finally, the expert never offered an opinion by testifying that the salaries received by the defendants were unreasonable.

From the foregoing, it is apparent the trial court acting as factfinder did not err in dismissing appellant's claim pursuant to Civ. R. 41(B)(2). Under this rule the court, in a non-jury case, on a motion for involuntary dismissal, is not required to review the evidence in the light most favorable to the plaintiff, but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence. It follows that the judge (upon the motion for dismissal) was entitled to weigh the evidence. His conclusions may not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence. *Jacobs* v. *Bd. of Cty. Commrs.* (1971), 27 Ohio App. 2d 63, 65, 56 O.O. 2d 245, 246, 272 N.E. 2d 635, 636-637; *Altimari* v. *Campbell* (1978), 56 Ohio App. 2d 253, 256, 10 O.O. 3d 268, 270, 382 N.E. 2d 1187, 1190.

The third assignment of error is overruled.

Assignment of Error No. IV

"IV. The trial court erred in con-

ducting the trial of this matter with the objective of reaching a swift disposition of this case being the primary and overriding objective of the court in regard to every aspect of the court's handling of the case.''

Appellant claims the trial court's haste in disposing of this case precluded a full and fair hearing of the lawsuit. Specifically, appellant cites (1) the court's failure to grant a continuance; (2) the court's refusal to grant a substitution of parties; (3) the court's prior involvement with this case; (4) the failure to impanel an advisory jury; and (5) pressure by the court.

The granting or denying of a motion for continuance rests within the sound discretion of the trial court. Absent an abuse, this court will not disturb the decision of the trial court. *Touche Ross & Co.* v. *Landskroner* (1984), 20 Ohio App. 3d 354, 20 OBR 459, 486 N.E. 2d 850. As already indicated, this case was over four years old when it finally came to trial. Even though appellant's first counsel withdrew more than one month before trial, appellant's second counsel had represented appellant in numerous actions prior to this case, involving many of the same issues. In addition, the court did continue the trial from December 17, 1985, until April 9, 1986, giving appellant and his counsel additional time to prepare the case.

The refusal to grant a substitution of parties was discussed in the first assignment of error and found to be without merit.

The prior involvement by the trial court judge was an issue addressed at trial. The judge indicated that when this case was first filed, he offered to remove himself, and the parties waived any objection to his participation.

The failure of the trial court to impanel an advisory jury was not error since Civ. R. 39(C)(1) makes such an alternative discretionary. *Pokorny* v.

*Local 310* (1973), 35 Ohio App. 2d 178, 64 O.O. 2d 277, 300 N.E. 2d 464, reversed on other grounds (1974), 38 Ohio St. 2d 177, 67 O.O. 2d 195, 311 N.E. 2d 866.

Finally, the appellant's contention that the court's handling of this case unduly pressured appellant's counsel is without merit. Besides that which has already been discussed, there is no justifiable basis for concluding the court's disposition of this matter was prejudicial to the appellant.

The fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DYKE, J., concurs.

MARKUS, C.J., concurs in judgment only.