**HER, INC., on Behalf of STONEBRIDGE CORPORATION, Appellant,**

v.

**PARENTEAU et al., Appellees.\***

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–755.

Decided Feb. 14, 2002.

---

\* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1486, 2002-Ohio-2625, 769 N.E.2d 402.

Maguire & Schneider, L.L.P., Karl H. Schneider and William C. Donahue, for appellant.

Ulmer & Berne, L.L.P., Thomas L. Rosenberg and Edward P. Simms, for appellees.

TYACK, Presiding Judge.

{¶ 1} On August 5, 1999, HER, Inc. ("HER"), on behalf of Stonebridge Corporation, refiled a complaint in the Franklin County Court of Common Pleas against Thomas K. Parenteau[1] and Parenteau Builders, Inc. ("Parenteau Builders"). HER brought the complaint as a shareholder derivative action for damages allegedly incurred by Stonebridge Corporation. The complaint set forth claims against Mr. Parenteau of unlawful conflicts of interest, breach of fiduciary duty, breach of the duty of reasonable care, and breach of the duty to act in the best interest of the corporation. A breach-of-contract claim was asserted against Parenteau Builders.

{¶ 2} By way of brief background, on June 23, 1995, a close corporation agreement was entered into by Parenteau Development and Design, Inc. ("PD &

---

1. The caption on the complaint refers to Mr. Parenteau as "Thomas K. Parenteau." The record reflects that Mr. Parenteau's middle initial is actually "E." (See Jan. 22, 1999 Parenteau deposition at 4.)

D"), and HER. The sole shareholder of PD & D was Mr. Parenteau. The name of the corporation was Stonebridge Corporation ("Stonebridge"), and PD & D and HER each owned 50 percent of the stock in Stonebridge. One of the purposes of Stonebridge was to acquire certain land in Marysville, Ohio, and to develop and construct condominiums on the land. Any act by Stonebridge required the approval of all shareholders.

{¶ 3} The complaint averred the following. In January 1994, Don Fogy, Inc. bought the land described above for $127,500. The land was then sold to Tim Hass.[2] Two days after he purchased the land for $174,500, Mr. Hass sold the land to Mr. Parenteau and his wife for $265,000. The sale occurred on June 15, 1994.

{¶ 4} According to the Stonebridge close-corporation agreement, Mr. and Mrs. Parenteau conveyed the land to Stonebridge on October 19, 1994, subject to a mortgage in the original amount of $185,000. The close-corporation agreement called for Mr. and Mrs. Parenteau to receive $180,000 for the land. As also evidenced in the close-corporation agreement, HER loaned Stonebridge $90,000, and a promissory note was executed by Stonebridge as to that loan. Mr. and Mrs. Parenteau received $90,000 in cash at the closing of the HER loan, and Stonebridge also executed a promissory note in the amount of $90,000 payable to the Parenteaus. The $90,000 notes executed by Stonebridge to HER and the Parenteaus were of equal priority and were due on the same date (two years from their execution).

{¶ 5} The close-corporation agreement also called for Parenteau Builders to be the general contractor on the condominium development, and Stonebridge and Parenteau Builders entered into a construction contract for that purpose. According to the complaint, the construction project ran into many problems allegedly caused by Mr. Parenteau and Parenteau Builders. The complaint averred that Parenteau Builders abandoned the project prior to its being substantially completed.

{¶ 6} The complaint averred that Mr. Parenteau breached his duties owed to Stonebridge by artificially inflating the price of the land described above and by his actions relating to the problems with the condominium construction project. Further, the complaint averred that Parenteau Builders had breached the construction contract with Stonebridge.

{¶ 7} On October 12, 1999, Mr. Parenteau and Parenteau Builders filed a motion to dismiss the derivative suit on the basis that HER could not fairly and adequately represent the interests of all similarly situated shareholders. In essence, Mr. Parenteau and Parenteau Builders asserted that a derivative suit

---

2. The complaint avers that Mr. Hass was "Parenteau's" construction foreman.

brought by HER was improper because the only other shareholder in Stonebridge, PD & D, did not wish to bring the suit and that HER represented only HER's interests. The trial court converted the motion to dismiss into a motion for summary judgment.

{¶ 8} On June 1, 2001, the trial court rendered a decision and judgment entry granting summary judgment in favor of Mr. Parenteau and Parenteau Builders. The trial court determined that HER could not adequately and fairly represent the interests of similarly situated shareholders because any recovery would benefit HER only, as Mr. Parenteau was the sole shareholder of Parenteau Builders, that the lawsuit would not benefit PD & D and would be disruptive to PD & D, that HER's personal interests far exceeded its interests in the derivative action, and that HER had no support for the lawsuit from Stonebridge's other shareholder, PD & D. Because the trial court determined that HER did not meet all of the requirements under Civ.R. 23.1, it granted summary judgment in favor of Mr. Parenteau and Parenteau Builders and dismissed the complaint.

{¶ 9} HER (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:

{¶ 10} "The trial court erred in deciding that HER, Inc. being a fifty (50%) percent shareholder of the Stonebridge Corporation, could not fairly and adequately represent the interests of the similarly situated shareholder, and bring a shareholder derivative action on behalf of Stonebridge Corporation, against Thomas E. Parenteau and Parenteau Builders, Inc.

{¶ 11} "The trial court's action in deciding that a fifty (50%) percent shareholder cannot represent the interest of the Parenteau Development and Design, Inc. (the other fifty (50%) percent shareholder) in pursuing certain Defendants, who happen to be related entities to that shareholder leaves that pursuing shareholder powerless, without a remedy, and is a violation of the guaranties of the open courts' provision of the Ohio Constitution."

{¶ 12} In its first assignment of error, appellant contends the trial court erred in granting summary judgment in favor of Mr. Parenteau and Parenteau Builders (hereinafter collectively referred to as "appellees"). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. Our review of the appropriateness

of summary judgment is de novo. See *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

{¶ 13} "The sole issue before this court is whether appellant met the requirement under Civ.R. 23.1 that it fairly and adequately represents the interests of similarly situated shareholders. Civ.R. 23.1 states:

{¶ 14} "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation."

{¶ 15} There is no bright-line test to be applied in determining whether a plaintiff in a derivative suit fairly and adequately represents the interests of similarly situated shareholders. However, in *Norris v. Weir* (1987), 35 Ohio App.3d 110, 520 N.E.2d 10, the court of appeals set forth elements to be considered in evaluating whether this requirement under Civ.R. 23.1 is met.[3] The elements are (1) economic antagonisms between the representative and the class, (2) the remedy sought by plaintiff in the action, (3) indications that the named plaintiff was not the driving force behind the litigation, (4) plaintiff's unfamiliarity with the litigation, (5) other litigation pending between the plaintiff and defendants, (6) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself, (7) plaintiff's vindictiveness toward the defendants, and (8) the degree of support plaintiff was receiving from the shareholders he purports to represent. Id. at 114–115, 520 N.E.2d 10.

{¶ 16} The above factors can certainly be considered by this court in determining whether appellant fairly and adequately represents the interests of similarly situated shareholders. However, it is clear that such a determination must be made on a case-by-case basis. See *Davis v. Comed, Inc.* (C.A.6, 1980), 619 F.2d 588, 593 (under the fair and adequate requirement under Fed.Civ.R. 23.1, a court should examine any indication of extrinsic factors that render it likely that the representative may disregard the interests of the class members, and the factors examined are usually interrelated). This is especially true in cases such as the one at bar, where a close corporation is involved. Indeed, the case before us presents an even more unique situation because it involves a close corporation consisting of only two shareholders, each one holding an equal interest in the corporation, and one of whom also represents the interests of the defendants in the derivative suit.

{¶ 17} In making our determination, we are guided by the above factors as well as certain concepts applicable to derivative suits in general.

---

3. *Norris* was overruled on other grounds in *Perry v. Eagle–Picher Industries, Inc.* (1990), 52 Ohio St.3d 168, 556 N.E.2d 484.

Where the basis of an action is a wrong to the corporation, redress must be sought in a derivative suit, the stockholder has no right, title, or interest in the claim itself, and the corporation is an indispensable party to the action. *Grand Council of Ohio v. Owens* (1993), 86 Ohio App.3d 215, 219, 620 N.E.2d 234. Stated another way, a shareholder brings a derivative action on behalf of the corporation for injuries sustained by or wrongs done to the corporation, and a shareholder brings a direct action where the shareholder is injured in a way that is separate and distinct from the injury to the corporation. *Boedeker v. Rogers* (2000), 140 Ohio App.3d 11, 21, 746 N.E.2d 625.

{¶ 18} Appellees contend appellant does not fairly and adequately represent the interests of the other shareholder, PD & D, and represents only appellant's own interests. Appellees make this assertion because PD & D has no desire to bring this suit. However, this cannot be the deciding factor in determining whether appellant is a fair and adequate representative. If this were the key factor, then the corporation itself would have no redress for alleged wrongs taken against it.[4] Indeed, a derivative action allows a shareholder to circumvent a board's refusal to bring a lawsuit. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 107, 548 N.E.2d 217. This is precisely what appellant seeks to do in the case at bar. The question then becomes whether such a suit may be maintained as a derivative suit.

{¶ 19} In answering this question, we first determine whether appellant properly brought suit on behalf of Stonebridge and for injuries allegedly sustained by or wrongs done to Stonebridge, rather than for alleged injuries sustained directly by appellant. Such a determination requires an examination of the nature of the alleged wrongs. See *Grand Council of Ohio*, 86 Ohio App.3d at 220, 620 N.E.2d 234; *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 176, 23 OBR 339, 492 N.E.2d 426. In general, actions for breach of fiduciary duty are brought as derivative suits, and the right to maintain actions to recover for the alleged negligence, fraud, or misconduct of directors or officers that results in depletion of corporate property rests with the corporation itself. *Grand Council of Ohio* at 220, 620 N.E.2d 234. Such damage is done to the corporation and affects the shareholders only indirectly and all of them alike. *Id.* In contrast, a shareholder who is injured separately and distinctly from an injury to the corporation has a direct action against the wrongdoer. *Crosby,* 47 Ohio St.3d at 107, 548 N.E.2d 217.

---

4. As indicated above, Stonebridge's close-corporation agreement requires a unanimous vote of the shareholders in order to take any action. At a shareholders' meeting called for the purpose of deciding whether to file the present suit, appellant's representative voted in favor of bringing this suit, and PD & D's representative voted against bringing suit. Accordingly, the proposed resolution to bring this suit did not pass.

{¶ 20} We now examine the complaint filed in the case at bar in order to determine the nature of the wrongs alleged. As indicated previously, the complaint set forth claims of breach of fiduciary and other duties and unlawful conflicts of interest against Mr. Parenteau, a director and officer of Stonebridge, and breach of contract against Parenteau Builders, a corporation owned solely by Mr. Parenteau. Specifically, the complaint averred the following:

{¶ 21} "5. * * * Stonebridge hired Parenteau Builders, Inc. to be the General Contractor to build the project. Parenteau Builders, Inc. is owned by Thomas K. Parenteau, which * * * puts him in the conflict area of being an officer and director of Stonebridge, with certain obligations to Stonebridge and also having certain not fully compatible obligations to his own corporation which was functioning as the General Contractor.

{¶ 22} "6. * * * [I]n [regard to] the purchase of the land for the [condominium] project, * * * Thomas Parenteau purportedly conveyed this land to Stonebridge Corporation, as a capital contribution although, said land had a large mortgage on it. After said alleged 'contribution,' HER, Inc. bought into Stonebridge Corporation as an equal shareholder, and paid $90,000.00 to Stonebridge. Thomas Parenteau made representations that he had made an unequal capital contribution to Stonebridge Corporation and that he should be entitled to the $90,000.00 which HER contributed. He never disclosed to Stonebridge or HER that his prior actions with regard to the purchase of this 5.10 acre tract had artificially inflated its purported worth, and his actual contribution to Stonebridge on this tract amounted to far less than what he claimed. HER, acting in good faith, but denied knowledge of the real facts, by Thomas Parenteau, permitted him to pocket the $90,000 in question. [Sic.]

{¶ 23} "* * *

{¶ 24} "8. Pursuant to the construction contract between Parenteau Builders, Inc. and Stonebridge Corporation, * * * Parenteau Builders, Inc. was to be entitled to a contractor's fee in the amount of ten percent of the total cost of the completed work. Parenteau Builders, Inc. was permitted * * * to ask for and receive progress payments with regard to the ongoing completion of the contract. * * * There were misrepresentations made by Thomas Parenteau with regard to how much work was actually completed and thus Parenteau Builders, Inc. was inappropriately paid for work which was not completed * * * and before payments were ever due. Thomas K. Parenteau owed a duty to Stonebridge to assure that payments were not made in this matter. * * *

{¶ 25} "9. Pursuant to * * * the construction contract, if additional costs were incurred in building this project, Parenteau Builders, Inc. was to notify Stonebridge of the problems, and demonstrate the need for the extra work and extra costs. The authorization for such extra work and extra costs was to only be

approved with the knowledge and agreement of the owner. This project was plagued by the need for extra work and extra costs, caused by Thomas Parenteau's and Parenteau Builders, Inc.'s improper and negligent actions in the building of the project. * * * Thomas K. Parenteau acted, solely and without the knowledge of Stonebridge, to authorize extra costs and additional costs. Said actions improperly caused thousands of dollars in cost overruns which Stonebridge was not able to address or consider at the time they were incurred. * * *

{¶ 26} "10. * * * [T]he construction contract provides that Parenteau Builders, Inc. * * * was to provide specified limited warranties. It never did so. * * *

{¶ 27} "11. * * * [T]he construction contract required Parenteau Builders, Inc. to keep full and detailed accounts and exercise such controls as may be necessary for the financial management of the cost of the work under the contract. * * * Parenteau Builders, Inc. put into place no real internal controls or audit trail to ensure that the money Stonebridge drew down on the construction loan actually went to the Stonebridge project. * * *

{¶ 28} "* * *

{¶ 29} "14. HER, Inc. initiated procedures to oversee the on-going construction of the project in July 1996. These examination procedures showed sloppy, incomplete and slipshod work.

{¶ 30} "15. The initial contract * * * did require the contractor to use commercially reasonable efforts to complete each phase within 180 days of the start of construction of such phase. As it developed, Parenteau Builders, Inc. abandoned the project, well before it was substantially completed and breached its allegation to provide the limited warranties.

{¶ 31} "16. * * * [C]onsiderable problems developed with Parenteau Builders, Inc.'s building of the project. There were numerous problems causing the completion date to be delayed over and over. Later investigation indicates that a project of this size was actually above the experience and expertise of Parenteau Builders, Inc.'s personnel.

{¶ 32} "17. * * * Only forty-eight (48) of the original eighty units of the project are completed and only because HER, Inc. stepped in and completed the forty eight (48) units under construction. * * * HER, Inc. has projected a loss exceeding $1,200,000.00 on this project.

{¶ 33} "18. Parenteau Builders, Inc.'s failure to complete this project constituted a breach of its obligation under paragraph 10 of the construction contract."

{¶ 34} The complaint went on to set forth the claims against Mr. Parenteau for his actions and omissions, including (1) inducing appellant into paying him

$90,000 for a claimed overcontribution, which damaged Stonebridge in an amount no less than $90,000, (2) causing Stonebridge to pay excessive, unjustified amounts for the land and the modular homes used for the construction project, (3) causing delays in construction which resulted in Stonebridge incurring substantial losses on the project, (4) failing to use reasonable care owed to Stonebridge in overseeing the work of Parenteau Builders, which resulted in breaches of the construction contract and losses to Stonebridge. In addition, the complaint set forth a claim of breach of contract against Parenteau Builders stemming from essentially the same acts described above. The complaint averred that Stonebridge had been damaged by these acts and breaches in an amount exceeding $1,200,000.[5]

{¶ 35} The wrongdoings/injuries set forth above are alleged to have been made against Stonebridge, not appellant individually. The complaint does aver that appellant made a capital contribution of $90,000 and that Mr. Parenteau "pocketed" that amount. However, the complaint does not aver that appellant itself was injured in that amount or that appellant would recover that amount if the lawsuit was successful in this regard.

{¶ 36} Indeed, as set forth in the close-corporation agreement, appellant and Mr. Parenteau were each owed $90,000 by Stonebridge, and each loan was due two years from its making. Presumably, the loans would be paid from any profits realized by Stonebridge. If Stonebridge was successful in this lawsuit and recovered money damages, the close-corporation agreement and any other corporate bylaws would govern how this money would be distributed. There is nothing in the record before us to suggest that appellant would directly recover any amounts to the exclusion of the other shareholder, PD & D. Rather, it is Stonebridge itself that would recover damages, and its shareholders may only benefit indirectly.

{¶ 37} Thus, a review of the complaint reveals that the wrongdoings were allegedly inflicted upon Stonebridge, not upon any shareholder individually. Hence, the complaint sets forth claims that are typically brought as a derivative suit. We now address appellees' assertion that appellant cannot meet the requirement under Civ.R. 23.1 that it can fairly and adequately represent similarly situated shareholders.

{¶ 38} The fact that the only other shareholder in Stonebridge directly opposes this litigation does not preclude a finding that appellant can fairly and adequately represent similarly situated shareholders. Civ.R. 23.1 states that a

5. The complaint also alleged that Stonebridge was damaged in an amount no less than $90,000 relating to the sale of the land by the Parenteaus to Stonebridge; however, it seems this amount was claimed in addition to the $1,200,000.

"derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders *similarly situated* in enforcing the right of the corporation." (Emphasis added.) Civ.R. 23.1 does not require that the plaintiff represent the interests of all shareholders or even a certain number of shareholders. Rather, the plaintiff need only fairly and adequately represent the interests of those shareholders who are similarly situated.

{¶ 39} Here, there is no other shareholder similarly situated to appellant. Mr. Parenteau, individually and as the sole shareholder of Parenteau Builders, the defendants in this action, stands to lose financially if Stonebridge prevails in this suit. Hence, we do not consider PD & D (which is also owned solely by Mr. Parenteau) in our determination of whether appellant is a fair and adequate representative of similarly situated shareholders. See *Riggin v. Rea Riggin & Sons, Inc.* (Ind.App. 2000), 738 N.E.2d 292, 304 (a shareholder who has financial or personal concerns that will be injured if the corporation prevails should be classified as dissimilar to the plaintiff in enforcing the right of the corporation). Further, in opposing appellant's efforts in regard to this lawsuit, it is possible that PD & D was motivated by its individual interests rather than by what was beneficial to Stonebridge. See *Larson v. Dumke* (C.A.9, 1990), 900 F.2d 1363, 1368.

{¶ 40} For all of these reasons, and by virtue of the specific circumstances presented in the case at bar, we do not consider PD & D a similarly situated shareholder whom appellant must fairly and adequately represent. Rather, appellant is the only similarly situated shareholder as that term is used in Civ.R. 23.1. Appellees have cited cases that allegedly support their position that a single shareholder who has no support from the other shareholders may not bring a derivative suit. However, for the reasons discussed above, we decline to follow any such cases. Further, more recent case law has also rejected this line of reasoning.

{¶ 41} For example, appellees cite *Kuzmickey v. Dunmore Corp.* (E.D.Pa. 1976), 420 F.Supp. 226, in support of their position. The court in *Kuzmickey* determined that under Fed.Civ.R. 23.1, a derivative action could not be maintained unless the plaintiff represented the interests of shareholders other than herself. Id. at 231. In so concluding, the court pointed out that the plaintiff had no support from any other shareholder. Id. However, *Kuzmickey* is distinguishable from the case at bar. In *Kuzmickey,* there were more than just two shareholders—there were nine, two of whom were named defendants. Id. at 230. Obviously, the two named defendants were against bringing the lawsuit, and the remaining six submitted affidavits stating that the plaintiff did not represent their interests. Id. The court recognized that it was not necessary to have the

support of all minority shareholders, but it concluded that the plaintiff could not maintain a derivative action with no support from any other shareholder. Id. at 231.

{¶ 42} Because the facts in *Kuzmickey* are distinguishable, that case does not lend support for appellees' position. To the extent *Kuzmickey* or any other case may be cited for the proposition that a single shareholder may not bring a derivative action, we reject the application of such a hard-and-fast rule in all cases. Indeed, more recent cases have rejected this notion and have determined that there may indeed be a "legitimate class of one" in derivative lawsuits. See *Larson*, supra, 900 F.2d at 1368; *Jordon v. Bowman Apple Prods. Co., Inc.* (W.D.Va. 1990), 728 F.Supp. 409, 412; *Halsted Video, Inc. v. Guttillo* (N.D.Ill. 1987), 115 F.R.D. 177, 179–180. Indeed, in *Eye Site, Inc. v. Blackburn* (Tex. 1990), 796 S.W.2d 160, 162–163, the Texas Supreme Court concluded that its counterpart to Civ.R. 23.1 (which is, in pertinent part, identical to Ohio's rule) does not preclude a sole dissenting shareholder of a close corporation from enforcing the right of the corporation and that if the plaintiff is the only shareholder "similarly situated," the plaintiff is in compliance with the letter and purpose of the Texas counterpart to Civ.R. 23.1.

{¶ 43} Given all of the above, we conclude that the complaint sets forth a derivative claim. Further, the record before us shows that appellant, the only similarly situated shareholder, can fairly and adequately represent the interests of the corporation. Hence, a derivative suit was proper, and the pertinent requirement of Civ.R. 23.1 at issue in this appeal (fair and adequate representation) has been met. Accordingly, the trial court erred in granting summary judgment in favor of appellees and in dismissing the action.

{¶ 44} For all of the above reasons, appellant's first assignment of error is sustained. Appellant's second assignment or error is, therefore, rendered moot.

{¶ 45} Having sustained appellant's first assignment of error, and appellant's second assignment of error being rendered moot, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause to that court to conduct further appropriate proceedings.

> Judgment reversed
> and cause remanded.

PEGGY BRYANT and BOWMAN, JJ., concur.